1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7   TIA GRIFFIN,

8                          Plaintiff,          NO:  13-CV-0047-TOR

9         v.                                   ORDER GRANTING DEFENDANT'S
                                               MOTION FOR SUMMARY
10  BENEFICIAL IN HOME CARE,                   JUDGMENT
    INC.,

11
                           Defendant.
12

13        BEFORE THE COURT is Defendant's Motion for Summary Judgment

14  (ECF No. 43).  This matter was heard with oral argument on November 13, 2013.

15  Tia Griffin appeared *pro se* on her own behalf.  Markus W. Louvier appeared on

16  behalf of Defendant.  The Court has reviewed the briefing and the record and files

17  herein, and is fully informed.

18                          BACKGROUND

19        Plaintiff, proceeding *pro se* and *in forma pauperis*, alleges that her former

20  employer violated Title VII by discriminating against her on the basis of race in the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 1

1   wake of an accident involving a minor child under Plaintiff's care.  Plaintiff further

2   alleges that her former employer "obstructed justice" by withholding information

3   from Department of Health investigators during the ensuing investigation.

4         Defendant has moved for summary judgment on all claims, arguing that

5   there are no genuine issues of material fact for trial.  Defendant also asserts that it

6   is immune from liability on all claims arising from its statements to investigators

7   pursuant to Washington's child abuse reporting statute, RCW 26.44.060, and

8   Washington's Anti-SLAPP statute, RCW 4.24.510.  For the reasons discussed

9   below, the Court concludes that Defendant is entitled to summary judgment.

10                                         FACTS

11        At all times relevant to this lawsuit, Plaintiff Tia Griffin ("Plaintiff") was a

12  nursing assistant registered with the Washington Department of Health ("DOH").

13  Plaintiff, who is African American, was hired by Defendant Beneficial In Home

14  Care, Inc. ("Defendant") in June 2011 as a Nursing Assistant.  This was an at-will

15  employment relationship.  One of Plaintiff's main responsibilities in her role as a

16  Nursing Assistant was to provide part-time "respite care" for a minor child with

17  autism named S.D.  Generally, this entailed caring for S.D. for approximately three

18  to four hours per day while S.D.'s parents attended to errands or other matters.

19        S.D. was injured while under Plaintiff's care on October 22, 2011.  Plaintiff

20  asserts that she left S.D. alone in the bathroom for approximately ten seconds while

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 2

preparing to give the child a bath. Griffin Dep., ECF No. 46-1, at Tr. 61. Plaintiff

left the bath water running on a lukewarm temperature. Griffin Dep., ECF No. 46-

1, at Tr. 61. When Plaintiff returned, she discovered that S.D. had entered the

bathtub. Griffin Dep., ECF No. 46-1, at Tr. 61. A few minutes later, S.D. began to

wince and make noises. Griffin Dep., ECF No. 46-1, at Tr. 61. Plaintiff put her

hand in the bathwater and discovered that it was extremely hot. Griffin Dep., ECF

No. 46-1, at Tr. 61. She also observed that the bathtub's temperature control dial

had been turned to the hottest setting. Griffin Dep., ECF No. 46-1, at Tr. 62.

Plaintiff immediately turned off the water and removed S.D. from the bathtub.

Griffin Dep., ECF No. 46-1, at Tr. 62. The nature and extent of S.D.'s injuries is

not clear from the existing record. It appears, however, that S.D. was severely

burned and required extensive medical care at Sacred Heart Medical Center in

Spokane and Harborview Medical Center in Seattle. *See* ECF No. 53 at 103-105.

   At some point after the accident, S.D.'s parents contacted Defendant and

alleged that Plaintiff had been negligent in caring for S.D. and that S.D. had been

injured as a result. Pursuant to its mandatory reporting obligation, Defendant

reported the incident to the DOH. Defendant also placed Plaintiff on suspension

pending an official investigation in accordance with company policy. The matter

was subsequently investigated by the DOH, the Spokane Police Department and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 3

the Seattle Police Department.  While the precise outcome of these investigations

is unclear, it appears that Plaintiff was cleared of any deliberate wrongdoing.

While the above investigations were pending, Defendant terminated

Plaintiff's employment pursuant to the following company policy:

> If you have not officially given your notice to the agency, ***but have not worked any shifts in a 30 day period***, for reasons of; L&I, doctors' orders, personal, or any other reasons your personnel file will be closed and you will be terminated as an employee.

> If you wish to reinstate your employment with Beneficial In-Home Care, you may reapply.  You will not be promised a rehire.  You will be considered as any other applicant.

ECF No. 45-2 (emphasis in original).  Plaintiff did not apply to be reinstated after

she was cleared of wrongdoing.  This lawsuit followed.

DISCUSSION

Summary judgment may be granted to a moving party who demonstrates

"that there is no genuine dispute as to any material fact and that the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party

bears the initial burden of demonstrating the absence of any genuine issues of

material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then

shifts to the non-moving party to identify specific genuine issues of material fact

which must be decided by a jury.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 4

plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Only evidence which would be admissible at trial may be considered. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).

**A. Title VII Race Discrimination Claims**

Title VII prohibits both intentional discrimination on the basis of race ("disparate treatment"), and practices that, while not intentionally discriminatory, have a disproportionately adverse effect ("disparate impact") on racial minorities. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). In support of her Title VII claims, Plaintiff alleges that Defendant treated her less favorably than a white employee, Courtney Williams, who had also been suspended and terminated under similar circumstances. Specifically, Plaintiff alleges that Defendant (1) assisted Ms. Williams in applying for unemployment benefits while she served her suspension; and (2) eventually reinstated Ms. Williams' employment without requiring her to

formally reapply.  ECF No. 50 at 16; ECF No. 51 at 4; ECF No. 53 at 10-12.

These allegations implicate a disparate treatment (as opposed to disparate impact)

theory of liability.

   To state a prima facie disparate treatment claim under Title VII, a plaintiff

must show that (1) she belonged to a protected class (a racial minority); (2) she

was qualified for her job; (3) she was subjected to an adverse employment action;

and (4) similarly situated employees not in her protected class received more

favorable treatment.  *Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006).  If the

plaintiff successfully establishes a prima facie case, the burden shifts to the

employer to articulate a legitimate, non-discriminatory reason for its adverse

employment action.  *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir.

2010).  This is a burden of production rather than a burden of persuasion.  *Id.*  If

the employer articulates such a reason, the burden shifts back to the plaintiff to

demonstrate that the employer's proffered reason was a mere pretext for unlawful

discrimination.  *Id.*  The ultimate burden of proving intentional discrimination

remains at all times with the plaintiff.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450

U.S. 248, 253 (1981).

   The first three elements of Plaintiff's prima facie case are not in dispute.  For

purposes of the instant motion, the only contested issue is whether a similarly-

situated employee received more favorable treatment than Plaintiff.  *Moran*, 447

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 6

F.3d at 573.  Having thoroughly reviewed the record, the Court concludes that

Defendant is entitled to judgment as a matter of law on this issue.  As a threshold

matter, Plaintiff has failed to establish that that Ms. Williams was a "similarly

situated" employee.  As the Ninth Circuit explained in *Moran*, a plaintiff alleging

disparate treatment must demonstrate that the employee who allegedly received

more favorable treatment was similarly situated "in all material respects."  *Moran*,

447 F.3d at 755.

That standard has not been satisfied for two reasons.  First, Plaintiff was

suspended under much more serious circumstances.  Whereas Ms. Williams was

accused of stealing a client's medications, *see* ECF No. 53 at Exhibit 12, Plaintiff

was accused of abusing and/or causing serious injuries to a minor child.  Although

both women were ultimately cleared of wrongdoing, they were not "similarly

situated" while they served their suspensions.  *See Vasquez v. Cnty. of Los Angeles*,

349 F.3d 634, 641 (9th Cir. 2003) (employee not similarly situated to disparate

treatment plaintiff where employee "did not engage in problematic conduct of

comparable seriousness").

Second, there is no evidence that Plaintiff ever applied for unemployment or

spoke to Defendant about being reinstated.  As a result, Plaintiff was never in a

position to receive—or be denied—the same treatment that Ms. Williams allegedly

received.  With regard to the unemployment issue, the record simply reflects that

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 7

Ms. Williams received unemployment benefits while Plaintiff did not. Plaintiff would apparently have a jury infer that Defendant was somehow responsible for this circumstance, but the evidence to support such an inference is lacking. Moreover, assuming that Defendant was somehow responsible for Plaintiff not receiving unemployment benefits, its actions likely do not qualify as an "adverse employment action" for purposes of the third element of Plaintiff's prima facie case. *See Riley v. Tulsa Cnty. Juvenile Bureau ex rel. Tulsa Cnty. Bd. of Comm'rs*, 421 F. App'x 781, 785 (10th Cir. 2010) (holding that supervisor's interference with employee's claim for unemployment benefits was not an adverse employment action for purposes of a Title VII disparate treatment claim); *see also McDonald-Cuba v. Santa Fe Protective Servs, Inc.*, 644 F.3d 1096, 1102 (10th Cir. 2011) (holding that "an application for unemployment benefits, without more" does not amount to protected activity under Title VII).

As for the reinstatement issue, Plaintiff concedes that Ms. Williams was rehired after she had a "conversation" with a member of Defendant's human resources department. There is no evidence that Plaintiff ever had a similar conversation or otherwise contacted Defendant about the possibility of being reinstated. Plaintiff's vague and self-serving assertion that Defendant "did not return her calls" in July 2012 is insufficient to create a genuine issue of material fact. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

1  (noting that courts routinely "refuse[] to find a genuine issue where the only

2  evidence presented is uncorroborated and self-serving testimony").  Thus, the

3  Court concludes that Plaintiff was not similarly situated to Ms. Williams "in all

4  material respects."  *Moran*, 447 F.3d at 755.

5       In a similar vein, there is insufficient evidence to support a finding that Ms.

6  Williams was treated "more favorably" than Plaintiff.  The crux of Plaintiff's

7  argument is that unemployment and informal reinstatement were "never introduced

8  as options" to her.  ECF No. 50 at 16.  This argument misses the mark, as there is

9  no evidence that Defendant affirmatively "introduced" these options to Ms.

10  Williams.  Once again, it is undisputed that Ms. Williams was reinstated after she

11  had a "conversation" with a member of Defendant's human resources department.

12  ECF No. 50 at 16; ECF No. 53 at 12.  There is no evidence that Defendant, rather

13  than Ms. Williams, initiated this conversation.  The same is true with respect to the

14  unemployment issue; there is no evidence that Defendant affirmatively introduced

15  unemployment benefits as "an option" to Ms. Williams and declined to do the

16  same for Plaintiff.  For this additional reason, the Court concludes that Plaintiff has

17  failed to establish a prima facie case of disparate treatment.

18       At oral argument, Plaintiff asserted a second theory of disparate treatment

19  that was not fully developed in her briefing: that Defendant discriminated against

20  her by withholding information about the full extent of S.D.'s disabilities and care

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 9

1    needs, which information Defendant had previously provided to a white employee

2    named Kim Holbert.  Taken to its logical conclusion, Plaintiff's theory would be

3    that the information was withheld from her so a terrible accident would ensue,

4    resulting in her suspension and eventual firing.  In other words, this was all a grand

5    conspiracy to ensure she would fail at her job and be fired.  This theory fails for

6    lack of any proof.  This theory also fails to state a prima facie case of disparate

7    treatment because Defendant's alleged failure to provide relevant information

8    about S.D. does not qualify as an "adverse employment action."  For purposes of a

9    Title VII disparate treatment claim, adverse employment action is "a material

10   change in the terms and conditions of a person's employment."  *Chuang v. Univ. of*

11   *Calif. Davis, Bd. of Tr.*, 225 F.3d 1115, 1126 (9th Cir. 2000).  Failing to disclose

12   the full extent of S.D.'s disabilities and care needs simply does not rise to this

13   level.  Defendant is entitled to summary judgment on Plaintiff's Title VII claims.

14      **B.  Claims for Defamation, Libel, Slander, Obstruction of Justice,**

15         **Negligence and Intentional Infliction of Emotional Distress**

16      Plaintiff has asserted a variety of state common law claims arising from the

17   DOH's investigation into the incident involving S.D.  The essence of these claims

18   is that Defendant deliberately concealed several key facts from investigators which

19   tended to mitigate Plaintiff's culpability for the accident.  *See* ECF No. 53 at 12

20   ("The Defendant's [sic] would not admit that they had placed me in an unsafe,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 10

hazardous environment that they knew about since 2010."); ECF No. 57 at 11

("[E]ven today, the Defendant's [sic] continue to mislead investigators by not

acknowledging their blatant fraud and discrimination against me, Plaintiff, by

allowing me to be the face and scapegoat of blame after the fact of the incident in

order to hide their misconduct with all third and fourth parties involved in looking

into this situation."); Griffin Dep., ECF No. 46-1, at Tr. 93 (**Q:** "So, it sounds to

me like your beef with [Defendant] regarding the [DOH] investigation is that they

didn't tell the investigators about your level of training and the level of needs that

S.D. had." **A:** "Yes.").

By way of example, Plaintiff alleges that Defendant failed to inform DOH

investigators (1) that she was not qualified or properly trained to care for a low-

functioning autistic child like S.D.; (2) that S.D. required a much more advanced

level of care than Defendant was providing; (3) that the water heater in S.D.'s

home had been set to a scalding temperature of 140 degrees; and (4) that Plaintiff

suffered from a lower back impairment which may have made it difficult for her to

quickly lift S.D. out of the bathtub.  Plaintiff further alleges that Defendant's

refusal to provide DOH investigators with this information resulted in several non-

parties to this lawsuit making defamatory statements against her.  *See* ECF No. 53

at 12 ("By remaining silent throughout the investigation processes, [Defendant]

started a firestorm where third and fourth parties got involved in making

slanderous and libelous statements against myself, the Plaintiff.").

Defendant has moved to dismiss these claims as barred by Washington's

child abuse reporting statute.  As relevant here, the child abuse reporting statute

"immunizes those who report suspected child abuse to the authorities from suits

based on adverse consequences of reporting."  *Webb v. Neuroeducation Inc., P.C.*,

121 Wash. App. 336, 348 (2004).  The statute provides, in pertinent part:

> (1) [A]ny person participating in good faith in the making of a report
> [of child abuse or neglect] pursuant to this chapter . . . shall in so
> doing be immune from any liability arising out of such reporting.

> \*   \*   \*

> (5) A person who, in good faith and without gross negligence,
> cooperates in an investigation arising as a result of a report made
> pursuant to this chapter, shall not be subject to civil liability arising
> out of his or her cooperation.

RCW 26.44.060.

There can be no dispute that Plaintiff's claims arise from the "making of a

report" of child abuse or neglect and/or "cooperat[ion] in an investigation" into

such a report.  RCW 26.44.060(1) and (5).  Thus, Defendant is immune from

liability if it acted in good faith.  For purposes of RCW 26.44.060, good faith

means "a state of mind indicating honesty and lawfulness of purpose."  *Whaley v.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 12

*State Dep't of Soc. and Health Servs.*, 90 Wash. App. 658, 669 (1998). Defendant bears the burden of establishing that it acted in good faith. *Id.* at 668.

As a threshold matter, it is undisputed that Defendant was required by law to report all allegations of child abuse. *See* Griffin Dep., ECF No. 46-1, at Tr. 48, 51. This mandatory reporting obligation cuts sharply against a finding that Defendant acted with anything other than honesty and lawfulness of purpose. *See Whaley*, 90 Wash. App. at 669 (holding that day care operator's statutory obligation to report suspected child abuse "is a compelling consideration on the side of concluding her purpose was lawful"). The Court finds that, on the present record, Defendant has made a prima facie showing that it acted in good faith.

Moreover, the evidence of record does not support Plaintiff's claims that Defendant withheld relevant information from the DOH. During her deposition, Plaintiff conceded that she had no direct knowledge of what was—and was not— conveyed to investigators. Griffin Dep., ECF No. 46-1, at Tr. 49-50. Plaintiff later acknowledged that, to the best of her knowledge, Defendant had simply relayed the complaints that had been lodged by S.D.'s parents. Griffin Dep., ECF No. 46-1, at Tr. 102. Plaintiff did not depose any of Defendant's employees or any of the DOH investigators in an attempt to establish what information may have actually been omitted. At bottom, there is simply no *evidence* from which a rational jury could

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

find that Defendant acted in bad faith.  Accordingly, Defendant is immune from liability on Plaintiff's state law claims pursuant to RCW 26.44.060.

Defendant also moved to dismiss Plaintiff's state law claims pursuant to RCW 4.24.510, Washington's anti-SLAPP statute.  At oral argument, Defendant indicated a willingness to abandon its anti-SLAPP arguments in light of Plaintiff's representation that her claims were not directed toward "communication . . . regarding [a] matter reasonably of concern" to a government agency.  RCW 4.24.510.  Accordingly, the Court declines to address whether Defendant is entitled to relief under the anti-SLAPP statute.

## C. Disability Discrimination Claims

In her opposition briefing, Plaintiff references disability discrimination claims arising from Defendant's alleged failure to accommodate her asthma and lifting limitations.  ECF No. 51 at 4; ECF No. 53 at 8-10.  As Defendant correctly notes, no such claims were pled in Plaintiff's complaint.  Accordingly, these claims will be dismissed.  *See Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982) (a court's liberal interpretation of a *pro se* complaint may not supply essential elements of a claim that was never pled).

Assuming that these claims had been properly pled, Defendants are still entitled to summary judgment.  To prevail on a failure to accommodate claim under the Americans With Disabilities Act ("ADA"), Plaintiff must demonstrate

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

that "(1) she is disabled within the meaning of the ADA; (2) she is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) she suffered an adverse employment action because of her disability." *Samper v. Providence Sacred Heart Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012).

Here, there is no evidence that Plaintiff suffered an adverse employment action as a result of Defendant's alleged failure to accommodate her disabilities. Plaintiff was suspended due to an *allegation* that she caused S.D.'s injuries. She was subsequently terminated pursuant to Defendant's inactivity policy because she had not worked a shift in over 30 days. Neither of these adverse employment actions can be construed as arising from a failure to accommodate. To whatever extent Plaintiff's inability to lift S.D. out of the bathtub contributed to the child's injuries, she has failed to introduce evidence from which a rational jury could find that her suspension or termination was causally related to the alleged failure to accommodate. Thus, Defendant is entitled to summary judgment on these claims.

### D. Plaintiff's Request for Affirmative Relief

In her response to Defendant's motion for summary judgment, Plaintiff asks the Court to enter "a directed verdict or judgment as a matter of law instead of waiting for a jury trial." ECF No. 53 at 1. The Court construes this request as a

cross-motion for summary judgment.  For the reasons discussed above in conjunction with Defendant's motion, this motion is denied.

**E. Revocation of *In Forma Pauperis* Status**

Pursuant to 28 U.S.C. § 1915(a)(3), "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."  The good faith standard is satisfied when an individual "seeks appellate review of any issue not frivolous."  *See Coppedge v. United States*, 369 U.S. 438, 445 (1962).  For purposes of 28 U.S.C. § 1915, an appeal is frivolous if it lacks any arguable basis in law or fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

The Court finds that any appeal of this Order would not be taken in good faith and would lack any arguable basis in law or fact.  Accordingly, the Court hereby revokes Plaintiff's *in forma pauperis* status.  To the extent that Plaintiff wishes to pursue an appeal, she must pay the requisite filing fee.

**IT IS HEREBY ORDERED:**

1.  Defendant's Motion for Summary Judgment (ECF No. 43) is **GRANTED**.

2.  Plaintiff's request for "a directed verdict or judgment as a matter of law," ECF No. 53, construed by the Court as a cross-motion for summary judgment, is **DENIED**.

1    3.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal of

2          this Order would not be taken in good faith and would lack any arguable

3          basis in law or fact.  Plaintiff's *in forma pauperis* status is hereby

4          **REVOKED**.

5      The District Court Executive is hereby directed to enter this Order, provide

6 copies to Plaintiff and defense counsel, enter **JUDGMENT** for Defendant, and

7 **CLOSE** the file.

8      **DATED** November 15, 2013.

9



10                    THOMAS O. RICE

                  United States District Judge

11

12

13

14

15

16

17

18

19

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 17